Next case United States v. Capers. Good morning, your honors. May it please the court, Benjamin Silverman. This is Andrew Patel for James Capers. I'd like to argue two points this morning. If there's one minute towards the end, I'd like to address the insufficiency of the evidence on the Apprendi conviction. But I'd like to start with the argument that we raised in our supplemental brief that in light of Sessions v. DiMaia, there was a plain error in the jury instruction on the crime of violence element of the 924J conviction. Can I ask a question about that? It's not something the government raised, but it puzzled me a little bit. The 924C applies to crimes of violence and to drug trafficking crimes, right? Yes, your honor. And so if there was a RICO charge that was, where the pattern of predicate activity was a series of narcotics offenses, would not a 924C violation be able to be predicated on that as a drug trafficking crime? I don't think so, your honor, because 924C too defines drug trafficking crime very narrowly only as crimes that fall under the Controlled Substances Act and the Controlled Substance Import Export Act. So I think a violation of RICO, regardless of the predicates, can never fall within that clear definition. But we think that the error was in instructing the jury that no matter— In the eyes of Congress, aggravated felonies can be things that aren't aggravated, and in some cases aren't felonies, and things that are crimes exclusively related to drug trafficking aren't drug trafficking crimes, and God bless them. As the term is narrowly defined, yes. I got it. I understand. I work with the law we're given. Yes, your honor. And we think that the law where it is now is that in order for the racketeering conspiracy in count one to qualify as a crime of violence, it has to have at least—it has to be a conspiracy to operate the affairs of an enterprise through the commission of at least two predicate acts that themselves would involve the threatened, attempted, or actual use of physical force. But you agreed to the charge, though. We did, your honor. What's the impact of that on the level of review that we have? Your honor, we believe plain error is appropriate for the following reasons. First, this is an unusual circumstance where you have intervening, controlling authority before the judgment is final. And the waiver cases that the government cited, at least from what's on the face of the opinions themselves, didn't involve intervening, controlling authority. And we respectfully submit— Isn't Johnson already on the books? Yes, your honor. In terms of the modified plain error standard, we don't think that this case requires determination of whether Viola and the modified plain error standard is still good law. We think that we've proven prejudice. But I do think that those cases are important because they show a decades-long tradition in this court of recognizing that it would not make sense to force defense lawyers to have made objections that would have been frivolous under then-binding law, under then-controlling precedent in the circuit. What exactly—it was Hill that would have made this—what would have made this frivolous? Well, if the risk-of-force clause—we think it's been invalidated. If you assume it was on the books and it was pursuant to Hill at the time of the trial, then a racketeering conspiracy that involves narcotics, I think anybody would say it involves the risk that force could be used. It would have been a frivolous argument. Well, everybody would say that, perhaps, but the Supreme Court thinks no one could possibly tell. You know, I was looking at the opinion in Hill, and I was looking at DeMai, and I thought, I don't know who's right. I just know where they got five votes. And so we think that, you know, back then the objection would have been frivolous. If that were deemed to be wavered, to have assented to the government's template in those circumstances, then the message to the defense part would be that effective assistance requires reams of frivolous objections that will drive district courts and the government crazy, and inability to issue, to engage in any stipulations or concessions that efficiently move criminal justice. But Hill, I just want to make sure, Hill was already decided when this charge was given? That's right. Hill was the law of this circuit when this trial, and in the lead-up to the trial. And still is. It still is, Your Honor. We believe it's been abrogated in terms of the last section that discusses the risk of Two weeks ago, the Supreme Court invalidated as void for vagueness, materially identical language in 18 U.S.C. 16b, Hill and this Court's opinion in Acosta have recognized that the two statutes are to be read together. It's the only sensible application, we think. You think this panel is free to disregard the authority of Hill or to regard it as abrogated? When this, it has not specifically been aggravated. Your argument is that it follows inevitably from another decision. I believe that's right. I believe it follows inevitably from application of the Supreme Court's decision in DiMaia. In terms of whether it would require on-bank rehearing, if that's the question, I don't think it would. I think it's a pretty clear application of DiMaia. You have the Supreme Court having invalidated for vagueness the identical words in another statute. I was wondering why you even bothered to say materially identical. It's verbatim identical. There's one comma that's in one and not in the other, but it's identical for all practical purposes. You didn't just fail to object to this charge. You actually requested this charge, if I understand correctly, isn't that right, that you joined the, you and the government jointly requested the charge that you're now objecting to? It was a joint request. I mean, it was the government's template. It's a docket 108 and the record below. And it's interesting, the portion of this charge that the government actually cites Hill as the controlling authority, which cites the authority that we now think has been abrogated, and we think it's the same as if no objection had been lodged. Does it make a difference whether it's an objection or whether it's a joint submission of a charge for plain error review? Under these circumstances, we don't think so, Your Honor, because under these rare circumstances where you have intervening changes in the controlling authority, if it would, if that, if the rule was that the defense's agreement to join a charge that was then sound under controlling law in this precedent is waiver of an issue that couldn't have been foreseen, defense counsel will never be able to stipulate to anything with the government, will never be able to agree to joint request to charge, and it will dramatically hinder the efficient administration of justice within this circuit. You know, how could it be ineffective? It would certainly be ineffective assistance to waive a dispositive jury charge in a murder case. And we don't think it could be ineffective not to, you know, we don't think it could be ineffective to forego what would have been a frivolous objection. So we think under these unusual circumstances that don't come up very often that it can't make a difference. I'll ask you another question on something else, and that is, my understanding is that count three has never been challenged, the conviction on count three, is that right? That's right, Your Honor. We don't challenge narcotics conspiracy count. But we think How much time did he get on that count? On counts one and two, he was sentenced to 37 years and then five years concurrent on count five, which is the count we should, we believe should be vacated. Five years consecutive. Five years consecutive, thank you, Judge. And, but we also believe that the 37-year sentence on counts one and two should be vacated because we believe it was based on application of the murder guideline, the 43 levels of the murder guideline instead of 36 levels for the drug guideline. The PSR at paragraphs 54 and 55 and page five of the sentencing transcript make clear that that in turn was based off the jury's finding, which we believe is insufficient. But if you're careful what you ask for, you might at least, if you win on count five, get five years off. Are you suggesting that the judge gets to do a de novo resentencing now? That's our argument, Your Honor. And why couldn't the judge consider, so long as there is a life sentence available on the narcotics charge, why couldn't the judge consider the murder of which he was convicted, after all found guilty beyond a reasonable doubt by the jury, as relevant conduct? There's no question he could, but he didn't. Well, but he could on resentencing. And maybe, and maybe he did. After all, the Supreme Court has told us that a judge can consider the availability or the mandatory nature of a consecutive sentence in sentencing on some other count, right? The Supreme Court has said the judge doesn't have to say, here's your sentence for count one, and that's totally blind to the five-year mandatory, and then I'll put on the mandatory on top of it. The Supreme Court said you don't have to do that. You can recognize the five-year mandatory and therefore give a lower sentence on the other count. So why shouldn't we, in any event, send this back, if you're right with respect to count five, and tell the judge, you know, rethink. You're free to do whatever you think is appropriate in the new circumstances of only having these counts rather than those counts to deal with? Your Honor, I agree with that, and I think it would be relevant because the PSR, which appears to be what the district court adopted, you know, grounded application of the murder guideline in the jury's findings. We believe that, you know, if there was no sufficient evidence, you know, to support that finding, that it would be a relevant argument for defense counsel to raise at that time on that resentencing. No sufficient evidence for what? We believe there's no sufficient evidence to support the finding that the murder was – that one of the racketeering acts that the conspiracy was based on was the murder. I'm not sure I understand. I thought the argument about sufficiency had to do with the federal nature of the murder. We made that argument, too, with respect to the 924J count, Your Honor. Right, but why isn't the – I thought the RICO predicate included murder under state law. It did, Your Honor, but then in order – In one way or the other, if there was a murder under state law, whether it was charged anywhere in the indictment or not, that is something that is available to the judge as relevant conduct because the judge thinks that it is, even by a preponderance of the evidence related to the narcotics conspiracy. Even if you were right somehow that the – it isn't connected beyond a reasonable doubt and the jury couldn't find that as a standalone crime, I'm having trouble understanding why a judge faced with a 10-to-life sentence on an unchallenged narcotics sentence could not take into account the fact that the person standing before him had been found by a jury without challenge, beyond a reasonable doubt, to have committed a murder under New York state law. He could, Your Honor. There were also acquittals on the murder counts, but I understand what Your Honor is saying, and Your Honor is right – But he conceded the murder. In the opening statement, counsel said, we concede he murdered him. It was just not part of the RICO enterprise. That's right, and he was charged in the Bronx and prosecuted in the Bronx for murder. Everything Your Honor is saying we agree with that could be considered on resensing, and Your Honor is also right, our main point is that the 924J count should be vacated because of what's akin to a directed verdict that count one automatically qualified as a crime of violence, even absent jury findings with respect to the predicates that would be necessary to render it a crime of violence, because, you know, this Court has said a conspiracy to commit a crime of violence, if the object of the conspiracy is a crime of violence, the conspiracy is a crime of violence. But this Court in the vestige also said that a substantive RICO offense is only a crime of violence if it involves commission of two racketeering acts that themselves are a crime of violence. So a conspiracy to commit a substantive RICO offense that only involves commission of one racketeering act that would be a crime of actual threatened or attempted use of physical force would not be a conspiracy to commit a crime of violence under this Court. And what happened to the robberies? Was that withdrawn or something? Because as I read it, the indictment charged murders, robberies, and drugs, and then the jury verdict. I thought the jury was only asked about the murder? Right, Your Honor. There was not a full special verdict sheet. I think this Court said in Applin's, a special verdict sheet as to all predicates is recommended but not required. So there was only special interrogatories with respect to the apprendee issues that under 1963A could raise the maximum possible exposure. If there had been a complete verdict sheet as to proven, not proven, what racketeering acts, every single one was within the scope of the conspiracy, things would be a lot clearer now. But it's not. And because it's not, we don't know what the jury thought. But I emphasize that Mr. Capers was acquitted of murder in connection with drug dealing with respect to this exact same murder, right? So the jury had a very nuanced understanding of what was going on. There were two presentations and summations. There was one presentation by the government, this block, that block, the Jets and the Sharks, very monolithic, you know, using almost like the organized crime framework. And there was a defense presentation which is you had kids who hang out with each other on this block and that block. It's all very informal. And obviously the jury found that at least some of those kids could form an association and fact and some of them weren't a conspiracy. But the jury thought that it was not as big or clear a conspiracy as the government presented. Thank you. Thank you, Mr. Capers. We've got your argument. Thank you, Your Honor. You've got a couple of minutes to rebuttal. Have the government, please. May it please the court, my name is Scott Hartman. I represent the government on this appeal and I represented the government in the district court below. With the court's permission, I'd like to start by addressing this argument that was made about the violent predicates because I think that's something that should really be focused on here. It is true that the verdict form only asked the jury to make findings with respect to the predicates or the objects of the conspiracy that increased the statutory maximum, the Apprendi factors. So that was... You were asked two questions. Did the government prove the murder of McQueen and the second was the conspiracy to distribute narcotics? That's correct. You weren't asked about any of the robberies or anything else. That's correct. And the reason for that is because under Apprendi, those two factors have to be found by the jury in order for the statutory maximum to increase. But there was lots of evidence and the indictment did charge other violent acts as part of this racketeering conspiracy, which is why the parties all agreed at the time of the charge conference that if the jury found that this conspiracy existed and that the defendant joined it, it would constitute a crime of violence. I know that in the defendant's opening brief, he says specifically that he doesn't contest the sufficiency of evidence establishing that he conspired with others to conduct the affairs of the enterprise through a pattern of narcotics distribution and robberies. So it seems like at the very least with respect to the robberies in the opening brief, and I understand they've sort of changed their position here. The argument, they may not be challenging the sufficiency of the evidence, but that's different from saying the jury found. We don't know because no one asked the jury to return a verdict on all the predicates, which maybe next time you'll ask the court to do. Judge Lynch, I think the point here is that no one could look at this racketeering conspiracy and view it as anything other than a crime of violence. There was ample testimony here about the exchange of shootings between the two gangs and the targeting of this gang with the understanding that one of the objectives of the gang was to commit acts involving murder, including attempts at murder against rival gang members. And that there's evidence about that that's set forth in our brief at pages 24 and 28 through 28 about the defendant's involvement in the gang and the gang's activities specifically targeting rival gang members. There was a cooperating witness named Jesse Urban who testified about the fact that in order to stay a member of the gang, you had to put in work, which meant to retaliate against rival gang members. And that included through things like shootings and other acts of violence. There's testimony about that in the transcript at pages 206 and 210. But so what if the jury didn't return a verdict answering that question on those acts? Well, I think the point here is that, again, this is something that was not really contested below. And that's the point of the waiver doctrine here, is that there was no dispute that this was a violent enterprise, that the enterprise was engaged in violence. And the only real dispute, the issue that was being tried in this case, is whether or not the murder itself was committed as part of the racketeering enterprise. And so it wasn't unreasonable for counsel to waive this argument, and they did waive it. And the idea that somehow it was just dictated by Waive it or forfeit it? Well, I think they did both, actually. I mean, they waived it in the sense they joined our request to charge. It was a joint request to charge. What happened here is we drafted a request to charge. We sent it to defense counsel. They marked it up. And then we provided the joint markup to the court, and that was the party's joint request to charge. So there was nothing in the party's joint submission that indicated that the defendant had any question about whether or not this enterprise would constitute a violent criminal enterprise, a violent predicate for the 924J. Do you think the defendant would agree to that charge today after DeMaio? Given the position that he's taking here, I imagine he would not. It's not a very big difference between saying to the court, the parties jointly request this. I mean, if the objective is to get the court to charge it, the defendant can achieve the same effect by saying the government is requesting this. We don't object. Well, I think that would be a waiver as well, if he said we don't object. We don't object is not a waiver. It's a forfeiture. I guess that's true. Well, a failure to object. That's right, Judge LaValle. I mean, I think here it is different because it's joined by the defendant. I think that's right. So there is a waiver that, in our view, applies here. A defense counsel who didn't want to burden the administration of justice could also say, well, we object to this, but we recognize that that objection is foreclosed by circuit precedent and we're objecting solely to keep it open for later reconsideration in bank or by the Supreme Court. And that's exactly what, in our view, should have happened here if the view was that this should have been preserved. One thing to note here is that it was not a surprise that DeMaio was bubbling up through the court system. This was an issue that, at the time, was being hotly litigated in the district court. There was a companion case that charged the rival gang where there were motions made about the Johnson issues and there were issues with respect to the court's decision in Hill and whether it applied to a racketeering conspiracy. So this was very much something that was in the air, and the DeMaio decision by the Ninth Circuit had already been issued at the time that this case went to trial. So there was a circuit split that was present already on this issue. And so it's not as though, you know, I take it, part of the argument here with respect to the waiver and the forfeiture is that defense counsel couldn't have anticipated that the It's not correct that they couldn't have anticipated that. There was certainly a lot of disagreement in the circuits about that issue. But I'd like to shift to the argument about plain error here because I do think that even if you apply plain error to the issues here, the court can find that any error that may have existed with respect to the predicates would not have affected the outcome of this case. And that's because— Let me ask you something different. Yes. You've argued in your supplemental brief that you don't think the categorical approach should apply to B-type cases. That's right. How do you arrive at that? What's your—why do you think that? Because it's tried in the same case? Is that right? Well, I think— As opposed to prior convictions? I think that's right. I think—and, you know, there are in Justice Thomas' dissent as well as in Justice Gorsuch's concurrence, they both talk about the fact that under certain circumstances it may be appropriate to apply a more fact-intensive inquiry in determining whether or not something is a crime of violence. 924C is very different from Section 16B, and the reason for that is because the facts are all before the district court judge. There's no need to speculate about— And they are contested in the case in which the consequences of factual findings are apparent. Absolutely. The unfairness of using the fact-based approach in prior convictions is that there are certain things that can become established fact in those cases that weren't contested because they didn't matter at all in that case, but they can turn out to matter a lot years later. That's absolutely right, Judge LaValle. It's very different to be dealing with a prior conviction that was, you know, rendered years ago, and dealing with conduct that is an issue before the district court. And so the district court could properly view the facts and make a determination about whether or not this conduct was, in fact, a crime of violence on these particular facts. But even if that's true, that didn't happen here. That's correct. There was no need for the district court to make that finding, again, because this issue was waived. It wasn't raised before the district court. But if I could just speak briefly to this issue of plain error, because I think it's really important to understand, you know, Judge Lynch raised this question about whether or not the fact that the jury found the narcotics predicate could itself render the RICO conspiracy a drug trafficking crime. We agree with defense counsel that what the statute says is in order for a crime to constitute a drug trafficking crime, it has to be punishable under Title XXI. There is an argument that that's true here, because Section 1963 cross-references Title XXI, and so you could make an argument that what happened here because of the B1A finding is that the defendant was sentenced also under Title XXI. But even putting that aside, I think what's really important to understand here is that the RICO conspiracy and the drug conspiracy in this case were inseparable. The testimony established overwhelmingly that what motivated this violence was the desire to control the drug trafficking turf in this area. And there was ample testimony about this from Jesse Ervin, from Andrea Bell, who were the cooperating witnesses who testified. At page 210 of the transcript, Mr. Ervin talks about the fact that one of the reasons you retaliate is because if you don't, you can't continue to sell drugs in the area. So that's one thing to keep in mind, is that in terms of the presentation of the evidence and what the jury heard, there was no light in between what the drug conspiracy was and what the racketeering conspiracy was. And you know the jury agreed with that, because they found the B1A drug conspiracy as a predicate on the apprendi factors for the racketeering conspiracy. There was no other drug conspiracy that was presented to the jury. It's not as though there was some separate drug conspiracy that was being tried, or there was some argument that there was a separate drug conspiracy other than the racketeering enterprise at issue here. It was charged on two different theories, but the entity was the same. It was the Leland Avenue crew. And so when you're dealing with a place... But they did acquit him on count two. They did. So count two is a different, the elements of count two are different. Count two was the... The murder. The 1959. In aid of racketeering. How is that consistent with what you just said? So in order to convict someone of murder in aid of racketeering, as the court knows, you have to show that the defendant sought to maintain or increase his position in the enterprise. And in our view, what the jury concluded here is that the defendant may have wanted to commit the murder in order to service the enterprise, but he wasn't specifically focused on maintaining or increasing his position. He was already the boss, and he didn't worry about staying the boss, because that didn't depend on killing this guy. That's exactly right. What he cared about was the objectives of the enterprise, and showing that the enterprise would retaliate if their leader were challenged. And again, this is in service of their ability to dominate this drug turf. With respect to the 848... The Silverman says that suggests the jury had a very nuanced conception of the differing statutes here, and so they were instructed. They were instructed, and they didn't. I think what the verdict shows is that the jury did have a nuanced understanding of this, because what the jury did is they made a finding with respect to the racketeering conspiracy that the murder had been committed as part of the racketeering conspiracy. They made a finding that the murder had been committed as part of the 924J firearms count, which was hooked to both the drug conspiracy and the racketeering conspiracy. They didn't agree with us on the murder in aid of racketeering and the 848E murder during the course of the drug crime, but those, again, are statutes that have different language, different elements, and the jury was entitled to make that finding. I think what the jury's verdict shows is exactly that, that they weren't just lumping this all together and saying, okay, we agree with the government's theory. They were really looking at what the elements were for each of these crimes and making determinations about what the evidence showed. Thank you, Mr. Harmon. Mr. Silverman, you have a couple of minutes for rebuttal. Thank you. So I think that it's pretty much agreed now that the instruction was wrong and the issues are waiver and harm. With respect to waiver, the idea that defense should lodge an objection despite controlling precedent in this circuit because it's percolating through other circuits and you never know when the Supreme Court's going to do this or that, that's an unworkable rule. There's a gazillion circuit splits. There's a gazillion issues being put into cert petitions and percolating. We just don't know what's going to happen, and I just don't know how you would create boundaries for the scope of that principle. They're not all ones where this circuit has made a somewhat remarkable decision in Hill that a lot of people were puzzled by as to whether that was consistent with Supreme Court law when there is a case finding its way up to the Supreme Court at that time that might well call that into question. This is not like your routine . . . all these Johnson issues, these are not like, well, this has been well settled for a million years in this circuit, and it's just sort of a Hail to say the Supreme Court will reach a different conclusion. This is a highly controversial set of issues. I agree, but Hill was very intensely litigated. The defense bar made its presentation and the circuit ruled, and we live with the rule that's handed down. In terms of harm, I think the most important, to address Judge Droney's point about the acquittal on count two, is also the acquittal on count four, that the jury found this was not in support of drug dealing, and I think the notion that these were all definitely the same is just something that the jury rejected. Mr. Capers was also acquitted on count six, the 924C count. I think it's pretty clear, and again, this is not a sufficiency argument. We don't need to construe everything in the government's favor. We're talking about reasonable likelihood of a different outcome for purposes of Marcus, the fourth prong of the plain error standard. And I think for those purposes, the counts of acquittal, all three of them, are just as important to consider as the counts of conviction. And I think what the counts of acquittal show is the jury didn't believe these were all necessarily intertwined. And in terms of the question, Mr. Hartman said, you know, that the judge could find it was a crime of violence. No, we don't think so. That's our point. In any event, as was pointed out, there was no judicial finding, but we think that this is clearly an ingredient of the offense. This is a factual determination about the offense that's a prerequisite to the infliction of punishment and the finding of guilt. We think under the Supreme Court's precedent in Eileen v. United States, that's an element. It should have been submitted to the jury to decide. And we think that given that there were no findings as to the predicates on the RICO and given that the jury acquitted on three other counts, it's impossible to say that the error was harmless. If there are no other questions, I would just like to renew. We put in an application for a reply brief. The government has informed the court that they're submitting a brief on May 4th in the United States v. Barrett before this court. And we think, we obviously understand the court would want to know the fully fleshed out views of the Department of Justice on this issue. We would, we also respectfully submit that our chance to be heard on that and response would be helpful. This is the motion filed yesterday to be able to respond to the forthcoming brief from the government. So you'd like some more time for that, right? If we could have two weeks to file an ordinary reply to the forthcoming brief, we would appreciate that, Judge. Okay, thank you. Thank you. All right. We'll reserve decision and we'll take